UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MILO H . SEGNER, JR., | § | |
| | § | CIVIL ACTION NO. 3:12-CV-1318-B |
| Plaintiff, | § | |
| | § | Bankruptcy Case No. 09-33886-HDH |
| v. | § | Adversary Case No. 11-03385-HDH |
| | § | |
| RUTHVEN OIL & GAS, LLC., et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the bankruptcy court's Finding of Facts and Conclusions of Law (Bankr. Doc. 174). The district court reviews these findings and conclusions *de novo*. Fed. R. Bankr. P. 9033; *Executive Benefit Ins. Agency v. Arkinson*, 134 S. Ct. 2165, 2168 (2014). Review considers, but is not limited to, the parties' summary judgment submissions, the Objection filed to the bankruptcy court docket (Bankr. Doc. 229), and the supplemental briefing on the "Antecedent Debt Issue" (Docs. 86, 90, 98). After full review, the Court **ADOPTS** the Bankruptcy Court's findings and conclusions, and **AMENDS** the applicable legal standard for determining "value" under 11 U.S.C. § 548(c).

## I.

## ADOPTED FINDINGS OF FACT AND CONCLUSIONS OF LAW

For clarity and to help frame the issues for trial, this Court will list out several important adopted factual findings and legal conclusions:[1]

• Provident, a Delaware LLC, and numerous Provident-owned project entities (collectively,

---

[1] These are summary points. For more detail on the underlying bases for these findings and conclusions, *see* Bankr. Doc. 174.

Debtors), transferred $48,812,882.24 to Defendant Ruthven as a broker for acquiring various mineral interests (the Transfers). Debtors are the transferors; Ruthven is the transferee.[2]

- Fraudulent transfers are avoidable under 11 U.S.C. § 548(a)(1).

- This requires: (1) a transfer; (2) of the Debtors' property; (3) that occurred within two years before the Petition Date; and (4) with actual intent to hinder, delay, or defraud.

- The Transfers occurred within two years before the bankruptcy petition date.

- Operating as a Ponzi scheme creates a presumption that transfers were made with "actual intent to hinder, delay, or defraud." 11 U.S.C. § 548(a)(1)(A).

- Trustee Mil H. Segner, Jr. (Trustee) showed that Debtors operated as a Ponzi scheme, establishing the presumption.

- Defendants did not rebut the presumption.

- As a result, Trustee established all four elements, and the bankruptcy court ruled the Transfers were fraudulent transfers under section 548's actual fraud provision, 11 U.S.C. § 548(a)(1)(A); therefore, the Transfers are avoidable.

- 11 U.S.C. § 548(c) provides an affirmative defense to section 548(a).

- This affirmative defense, known as the "takes for value and in good faith" defense is available to Ruthven if it can prove: (1) it took for value, and (2) it took in good faith.

- A genuine issue of material fact exists as to whether Ruthven took for value.

- A genuine issue of material fact exists as to whether Ruthven took in good faith.

---

[2] Trustee alleged $56,185,027.14 in transfers. In its motion for summary judgment, it sought amounts avoidable by fraudulent transfer within two years before the bankruptcy petition date that had been admitted by Ruthven. Bankr. Doc. 73 at 3 n.9. This amount was only $48,812,882.24. *Id.* Summary judgment for this amount does not limit the proof of the additional $7,372,142.90 at trial.

## II.

## AMENDED CONCLUSION OF LAW

Defendants filed an objection to the bankruptcy court's Findings of Fact and Conclusions of Law (Bankr. Doc. 229) and a Motion for Leave to File Supplemental Briefing on "Antecedent Debt Issue" (Doc. 83). The Court granted the motion, and both parties briefed the issue.

In dispute is the standard for determining "value." In its Objection, Ruthven argues that Congress intended section 548(c) to protect transferees, so value should be viewed from the transferee's perspective. Bankr. Doc. 229, Defs.' Obj. 9–10. Ruthven also contends that the Transfers were made on account of a present or antecedent debt Debtors owed Ruthven, that Debtors gave a dollar-for-dollar credit against the debt, and the dollar-for-dollar credit constituted reasonably equivalent value as a matter of law. *Id.*

In its supplemental briefing, Ruthven argues that the "true standard is whether the estates were preserved from depletion by the payment," and that there was no depletion because when Debtors credited money to Ruthven they debited their debt, dollar-for-dollar. Doc. 86, Defs.' Suppl. Br. 5, 9–10. Essentially, because there was no change to the overall balance sheet there was no depletion. In addition to this argument, Ruthven frames the Transfers as both "transfers" and as payment of "obligations" Debtors owed Ruthven, not solely as "transfers." *Id.* at 11–12. It argues that because Trustee did not avoid the underlying obligations, he cannot avoid the transfers. *Id.* at 14.

Trustee, on the other hand, argues that even if Ruthven gave value, that value must be netted against what Ruthven received. Doc. 90, Pl.'s Resp. Br. 3. Trustee would apply this argument and determine the value, as the bankruptcy court did, in terms of how the Debtors' estate was benefitted. *Id.* at 4. Additionally, Trustee argues that there is no need to avoid the underlying

obligations to avoid the transfer. *Id.* at 5.

The bankruptcy court concluded that "[t]he Fifth Circuit has held that the primary consideration in analyzing the exchange of value for any transfer is the degree to which the transferor's net worth is preserved." Bankr. Doc. 174, Findings of Fact and Conclusions of Law 15 (citing *Warfield v. Byron*, 436 F.3d 551, 560 (5th Cir. 2006)). It cast the Transfers simply as transfers, not transfers and obligations. *Id.* at 6.

The Court will address the "transfer" versus "obligation" dichotomy, and then address the standard for determining value. First, the parties agree that the Bankruptcy Code differentiates between transfers and obligations. "Avoiding an obligation is distinct from avoiding a transfer made pursuant to the obligation." 5 *Collier on Bankruptcy* ¶ 548.03[4][a] (16th ed. 2014). Here, Trustee seeks to avoid a transfer made pursuant to an obligation, not the obligation itself. He made no procedural missteps in not seeking to avoid the underlying obligation.

Next, "value." In *Williams v. FDIC (In re Positive Health Management)*, 769 F.3d 899, 901 (5th Cir. 2014), the Fifth Circuit clarified the meaning of "value" under the section 548(c) affirmative defense (548(c) cases). Neither the parties' nor the bankruptcy court's articulation of "value" aligns with current Fifth Circuit case law for 548(c) cases. Section 548(c) provides an affirmative defense when a transferee "takes for value and in good faith." It gives the transferee a lien or allows it to retain any interest transferred "to the extent" it "gave value to the debtor in exchange for such transfer." *Id.* Key to this determination is the meaning of the word "value," and how the Court should measure it.

The Bankruptcy Code defines "value" as "property, or satisfaction or securing of a present or antecedent debt of the debtor." 11 U.S.C. § 548(d)(2)(A). Clearly, either property or payment for

- 4 -

a present or antecedent debt constitutes value. What is important is the standard for measuring that value. The Fifth Circuit has clearly stated that "In measuring 'value' under section 548(c) . . . this court looks not to 'the transferor's gain,' but rather to the value that the transferee gave up as its side of the bargain." *In re Positive Health Mgmt.*, 769 F.3d 899, 904 (5th Cir. 2014).[3] The question is: "how much did the transferee give?" *Id.* (quoting *In re Hannover Corp.*, 310 F.3d at 802). Ruthven's depletion standard is incorrect. It looks to Debtors balance sheet to determine the effect of the transfer on the transferor. It does not look to the value given by and the effect on the transferee.

Any transfer of value entitles the transferee to the affirmative defense, but the amount the transferee may secure with a lien or retain is limited "to the extent" of the value it gave to the debtor in the exchange. 11 U.S.C. § 548(c); *see In re Positive Health Mgmt.*, 769 F.3d at 906–07. This measurement standard has nothing to do with "reasonably equivalent value."[4] *Id.* at 906. Ruthven's arguments to the contrary are incorrect. Rather, measurement of value "to the extent" it was given requires netting. *See id.* Netting leads to a netted amount, which is returned to the transferor. *Id.* at 908. Netting is determined from the transferee's perspective. Trustee's position to the contrary is incorrect. The appropriate calculation for determining the netted amount is to take the entire amount transferred and to subtract from that amount the value the transferee extended to the

---

[3] In the Fifth Circuit, the standard for measuring value differs under the Bankruptcy Code and the Uniform Fraudulent Transfer Act (UFTA) even though the language in both is essentially the same. *In re Positive Health Mgmt.*, 769 F.3d at 904 n.3; *compare id.* at 904 (548(c) case), and *Jimmy Swaggart Ministries v. Hayes (In re Hannover Corp.)*, 310 F.3d 796, 802 (5th Cir. 2002) (same), *with Janvey v. Brown*, 767 F.3d 430, 440 (5th Cir. 2014) (UFTA case).

[4] This is another difference between the Code and UFTA; however, this is not a difference in application but in statutory language. Under the Code, the affirmative defense applies if there is value but only to the extent of that value, whereas under UFTA, the affirmative defense requires only reasonably equivalent value for a complete defense. *Compare* 11 U.S.C. § 548(c) ("takes for value and in good faith"), *with* Tex. Bus. & Com. Code Ann. §24.009(a) ("who took in good faith and for a reasonably equivalent value").

transferor in exchange for that transfer. *Id.*

Therefore, Ruthven is entitled to 548(c) protection if it can show that it gave any value in good faith, but only to the extent of the amount it gave up in the exchange. Genuine issues of material fact exist to each of these aspects. At trial, Ruthven will be required to show that it took for value, the measure of that value from its perspective (e.g., the market value of the services it rendered), and that it took in good faith.

### III.

### CONCLUSION

After conducting a *de novo* review, the Court **ADOPTS** the bankruptcy court's findings and conclusions, and **AMENDS** its legal conclusion on the standard for measuring value. The standard for measurement in this case—a 548(c) case—is articulated more fully in *Williams v. FDIC (In re Positive Health Management)*, 769 F.3d 899 (5th Cir. 2014).


**SO ORDERED.**

**SIGNED September 24, 2015**

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE