UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MILO H. SEGNER, JR, as Liquidating Trustee of the PR Liquidating Trust, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:12-CV-1318-B |
| RUTHVEN OIL & GAS, LLC, et al., | § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

The Bankruptcy Code makes certain transfers by bankrupt debtors avoidable, which means the trustee of the bankrupt's estate can sue the recipients of an avoidable transfer to recover funds for the benefit of the bankruptcy estate. To hold a recipient of an avoidable transfer liable, the trustee must show that the recipient is a "transferee" under the Bankruptcy Code. But courts have excluded from the definition of "transferee" recipients who lack dominion and control over funds they receive from the bankrupt, labeling such recipients "mere conduits" and insulating them from liability. In this case, Milo Segner, as trustee for the bankrupt Provident Royalties (Provident), seeks to recover an avoidable transfer from Cianna, which claims to be a mere conduit. The bankruptcy court found that Cianna's mere-conduit defense failed as a matter of law and granted summary judgment for Segner, or, in the event it lacked the authority to award summary judgment, recommended that this Court issue summary judgment for Segner on the mere-conduit issue. The Court adopted the bankruptcy judge's ruling, but Cianna has moved the Court to reconsider that decision. Cianna asserts that it was a sub-broker acting as an agent for Provident's broker and

- 1 -

therefore that it lacked dominion and control over the funds it received in the avoidable transfer. But Cianna has failed to present evidence of an agency relationship between it and the broker that would deprive it of dominion and control over the funds it received. Thus, because Cianna cannot survive summary judgment on the issue of whether it is a transferee, the Court **DENIES** Cianna's motion to reconsider.

# I.

# BACKGROUND

A.   *Factual History*[1]

Provident engaged Ruthven Oil & Gas, LLC (Ruthven) to help it find and acquire mineral rights. Bankr. Doc. 366, Pl. Summ. J. Reply App., 1.[2] Ruthven engaged Cianna to help it help Provident by assisting Ruthven in acquiring mineral interests in Oklahoma. *Id.* Cianna and Ruthven signed a Sub-Broker's Agreement in which Cianna promised to keep Provident's information confidential, *id.* at 4, and not to compete with Provident by acquiring mineral interests in Provident's areas of interest, *id.* at 5. The agreement says only that Cianna would "assist" Ruthven and propose transactions to Ruthven. *Id.* at 1, 4. The Sub-Broker's Agreement lacks provisions specifying how transactions would be structured or what kind of payment Cianna would receive. Although, Cianna's Principal, Kyle Shutt says Ruthven told him Cianna would be paid a commission. Bankr. Doc. 353, Def. Summ. J. App., 102.

Ruthven and Cianna fulfilled their promises to one another and to Provident. In a series of

---

[1] This factual history is drawn from the summary-judgment record.

[2] Citations to documents from the bankruptcy court's docket will begin with "Bankr. Doc."

transactions, Cianna acquired mineral interests and transferred those interests to Ruthven, who transferred the interests to Provident. Bankr. Doc. 353, Def. Summ. J. App., 102–03; Bankr. Doc. 350-4, Pl. Summ. J. App., 1371–75. Corresponding sums of money flowed from Provident to Ruthven to Cianna to the mineral owners. *Id.*

All of the transactions occurred as follows. Aware of Provident's interests and the prices it would pay, Cianna sought out mineral owners willing to sell. *Id.* When Cianna reached an agreement with a mineral owner, Cianna would execute in its own name a bank draft that would expire thirty days after being signed. *Id.* The drafts would obligate Cianna and the landowner to follow through with their transaction if, and only if, certain conditions happened: (1) Cianna had to verify that the landowner had clear title to the mineral interest to be transferred; (2) Cianna had to receive a signed deed from the mineral owner; (3) Cianna had to receive notice from Ruthven that Provident agreed to purchase the interest; and (4) Cianna had to receive payment from Provident through Ruthven for the mineral interest. Bankr. Doc. 353, Def. Summ. J. App., 102–03. Once these events occurred, Cianna would pay the landowner and accept and record the mineral deed. *Id.* The deeds list Cianna as the transferee from the landowners, and Cianna recorded the deeds in its own name before transferring the deeds to Ruthven. *See* Bankr. Doc. 350, Pl. Summ. J. App., 1398–866 (mineral deeds for conveyances between owners and Cianna and between Cianna and Ruthven). Also, for each transaction, Cianna received more money from Ruthven than it needed to pay the mineral owners and would pocket the difference between what it received from Ruthven and the amount it paid the mineral owners. Bankr. Doc. 353, Def. Summ. J. App., 122. Cianna's federal tax return lists the amounts it received from Ruthven as gross receipts or sales and the amounts paid to the landowners as cost of goods sold. Bankr. Doc. 350, Pl. Summ. J. App., 18, 1386–96.

Overall, Provident transferred $48,812,882.24 to Ruthven, Doc. 100, Adopted Findings of Fact and Conclusions of Law, 2, and Segner seeks to recover $21,117,572.79 from Cianna. Bankr. Doc. 423-1, Am. Ruling, 25. In turn, Cianna transferred $14,749,036.80 to the mineral owners and kept $7,295,070 for itself. Bankr. Doc. 353, Def. Summ. J. App., 90–99. Whereas Cianna says the $7,295,070 consisted of commissions, *id.* at 102, Segner characterizes the amount as profits from Cianna's buying and selling of mineral interests, Doc. 349, Pl. Summ. J. Br., 9.

B.  *Procedural History*

Provident filed for bankruptcy in June 2009, Bankr. Doc. 1, Compl. ¶ 24, and, in June 2011, Milo Segner filed this adversary proceeding in the bankruptcy court against Ruthven, Cianna, and others. *Id.* ¶ 1. The defendants moved in April 2012 to withdraw the reference from the bankruptcy court. Doc. 1, Mot. for Withdrawal of Reference. The case was reassigned to this Court in May 2013, Doc. 34, but the Court referred the case back to the bankruptcy court for all pretrial matters to be resolved, Doc. 73, Order of Reference. After de novo review of a report and recommendation of the bankruptcy judge in September 2015, this Court determined that Provident's transfer of $48.8 million to Ruthven and subsequent transfers of that money by Ruthven, including the transfers to Cianna now at issue, are avoidable under 11 U.S.C. § 548(a)(1)(A). Doc. 100, Mem. Op. & Order, 2. And in November 2015, the Court dismissed Segner's claims against all of the defendants except for Cianna pursuant to a settlement agreement. Doc. 105.

After the settlement, the only remaining issues were whether Cianna was a transferee under the Bankruptcy Code such that it could be liable to Segner, for how much Cianna could be held

liable, and whether Cianna could establish the affirmative defense under 11 U.S.C. § 548(c).[3] Relevant to the present motion, Cianna argued that it was not a transferee as to amounts it transferred to the mineral owners.[4] The bankruptcy court denied summary judgment on the affirmative defense because fact issues remained for the jury, and this Court agreed. Doc. 100, Mem. Op. & Order, 2. The bankruptcy court also limited Cianna's liability to $21,117,572.79 in light of the settlement and single-satisfaction rule[5] and granted Segner's motion for summary judgment on the issue of whether Cianna was a transferee, finding that Cianna's mere-conduit defense failed as a matter of law. Doc. 171-1, R. & R. The bankruptcy court was not sure whether it had the authority to rule on the motions for summary judgment, so it noted that, if it lacked the authority to rule on the motions, its ruling should be treated as proposed findings of fact and conclusions of law. *Id.* at 3–4. Then, treating the bankruptcy court's ruling as proposed findings of fact and conclusions of law, Cianna objected to the bankruptcy court's ruling on the mere-conduit issue. *Id.* at 3. But, rather than ruling on the objection, the bankruptcy court submitted its report and recommendation to this Court, noting therein Cianna's objection. *Id.* at 4. This Court then adopted the bankruptcy court's report and recommendation. Doc. 172, Order Withdrawing Reference. The only issue left for trial

---

[3] "[A] transferee or obligee of such a transfer or obligation that takes for value and in good faith has a lien on or may retain any interest transferred or may enforce any obligation incurred, as the case may be, to the extent that such transferee or obligee gave value to the debtor in exchange for such transfer or obligation." 11 U.S.C. § 548(c).

[4] Cianna does not argue that is was a mere conduit as to amounts it kept rather than sending to the mineral owners.

[5] According to the single-satisfaction rule, a trustee can recover only the amount transferred. 11 U.S.C. § 550(d). Thus, the Court had to determine how much of the initial sum Provident transferred to Ruthven Segner could recover from Cianna in light of the settlement agreement between Segner and the now-dismissed defendants. Bankr. Doc. 423, Am. Ruling, 4–5.

after the Court adopted the report and recommendation was Cianna's affirmative defense under § 548(c).

But the mere-conduit issue has risen from the grave. Cianna argued in its trial brief that the bankruptcy judge's ruling on its mere-conduit defense was incorrect and that this Court erroneously adopted the bankruptcy judge's report and recommendation on the mere-conduit issue. Doc. 229, Def. Trial Br., 17. To address this issue and other trial matters, the Court held a conference with the parties' attorneys on February 23, 2018. Doc. 238, Tr. After hearing discussion on the mere-conduit issue, the Court ordered the parties to propose a way to bring the mere-conduit issue back before the Court. Doc. 232, Am. Scheduling Order. The parties agreed that Cianna would raise the issue in a motion for recondsideration and that Segner would respond but that neither party would submit new briefing or argument. Doc. 234, Status Report. Cianna's motion to reconsider is now before the Court, Doc. 235, Mot. Recons., and, given that Segner has responded, Doc. 237, Resp., the motion is ripe.

## II.

## LEGAL STANDARD

*A.     Standard of Review: Motions to Reconsider Interlocutory Orders*

The Court's order adopting the bankruptcy judge's report and recommendation granting Segner's partial motion for summary judgment was an interlocutory order. *See Golman v. Tesoro Drilling Corp.*, 700 F.2d 249, 253 (5th Cir. 1983) ("An order granting partial summary judgment is interlocutory."). District courts are free to revisit and reverse interlocutory orders. *Lavespere v. Niagra Mach & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990). And the Court was and is obligated to review the bankruptcy judge's ruling on the parties' motions for summary judgment de novo. Fed.

R. Bankr. P. 9033(d).

B.      *Summary Judgment*

Federal Rule of Civil Procedure 56 governs motions for summary judgment in adversarial bankruptcy proceedings like this one. Fed. R. Bankr. P. 7056. Under Rule 56, Courts must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute "is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party." *Burrell v. Dr. Pepper/Seven Up Bottling Grp.*, 482 F.3d 408, 411 (5th Cir. 2007). And a fact "is 'material' if its resolution could affect the outcome of the action." *Id.*

The summary-judgment movant bears the burden of proving that no genuine issue of material fact exists. *Latimer v. Smithkline & French Labs.*, 919 F.2d 301, 303 (5th Cir. 1990). So the movant must identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). Once the movant has produced evidence on an element or claim or alleged the non-movant has no evidence, the non-movant must "identify specific evidence in the record" and "articulate the precise manner in which that evidence supports [its] claim" to show that a fact issue exists. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). And though the Court views evidence in the light most favorable to the non-movant when determining whether a genuine issue exists, *Munoz v. Orr*, 200 F.3d 291, 302 (5th Cir. 2000), mere "metaphysical doubt as to material facts," "conclusory allegations," "unsubstantiated assertions," or a mere "scintilla of evidence" will not save a non-movant from summary judgment, *Little v. Liquid Air Corp.*, 37 F.3d

1069, 1075 (5th Cir. 1994) (per curiam)(internal citations and quotation marks omitted).

## III.

## ANALYSIS

The Court will now review de novo the bankruptcy court's determination that Cianna's mere-conduit defense fails as a matter of law. The Court will begin by explaining how the mere-conduit argument fits into Segner's case against Cianna and the standard for determining whether a defendant is a mere conduit. Second, the Court will summarize the bankruptcy judge's mere-conduit opinion and evaluate its reasoning. And third, the Court will apply the summary-judgment standard to determine whether a fact issue remains for trial on Cianna's mere-conduit defense.

A.  *Mere-Conduit Status*

If a transfer is avoidable under the Bankruptcy Code, as the transfers to Cianna are, "the trustee may recover, for the benefit of the estate, the property transferred . . . the initial transferee of such transfer or . . . any immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550(a). To recover an avoidable transfer, then, a trustee must show that the recipient of the transfer is a "transferee." The Fifth Circuit has followed its sister circuits in excluding "mere conduits" from the definition of "transferee" as that term is used in § 550(a). *Sec. First Nat'l Bank v. Brunson (In re Coutee)*, 984 F.2d 138, 140–41 (5th Cir. 1993). To be a transferee a recipient must gain "actual dominion and control over the funds" received from the debtor. *Id.* at 141. And to have dominion over funds, a recipient must have the right to use the funds as she sees fit. *Id.* A recipient of funds who lacks the right to use funds received from a debtors as she sees fit, is a "mere conduit" rather than a transferee under § 550(a). *Id.* at 141 n.3.

B.  *The Bankruptcy Court's Mere-Conduit Ruling*

Segner and Cianna filed, and the bankruptcy court heard, cross motions for summary judgment on the issue of whether Cianna is a transferee. Bankr. Doc. 412, Ruling. Cianna argued that it was a mere conduit rather than a transferee because it received funds only as Ruthven's agent and therefore had to forward the funds to the mineral owners. *Id.* at 9–10. According to Cianna, the monies it received from Ruthven but did not pay to mineral owners were Cianna's commissions earned for acting as a sub-broker for Ruthven. *Id.* at 10. Segner contended however that Cianna did have dominion and control over the funds it received from Ruthven and that the monies Cianna kept were profits from buying and selling mineral interests rather than commissions. *Id.* at 9.

The bankruptcy judge agreed with Segner, granted Segner's motion, denied Cianna's, and found that Cianna's mere-conduit defense failed as a matter of law. *Id.* at 12. Key to the bankruptcy judge's reasoning were deemed admissions that "contradicted" Cianna's argument that it was merely Ruthven's agent. *Id.* at 10. In the form of deemed admissions, "Cianna admitted, for each transaction, that it paid a certain sum of money to a landowner in consideration for a real property interest and then conveyed that real property interest to Ruthven in consideration for a larger sum of money." *Id.* The bankruptcy judge reasoned that the admissions established that Cianna was a buyer and seller of properties rather than a conduit in a larger transaction between Provident and the landowners. *Id.* at 11. The bankruptcy judge wrote also that treating Cianna as a buyer and seller that took actual ownership of the mineral interests was consistent with the rest of the facts of this case, noting that (1) Cianna's warranting of title to the properties conveyed to Ruthven would be odd for a conduit but not for a buyer and seller of properties; (2) Cianna's listing on its tax return of the amount it received from Ruthven as gross receipts or sales and the amount it paid to landowners

as the cost of goods sold would not make sense if Cianna were a conduit; (3) Cianna's depositing of funds received from Ruthven into its general operating account, which lacked any restrictive styling and from which many transactions unrelated to the transactions at issue were paid, was inconsistent with conduit status; and (4) no provision of the sub-broker's agreement between Ruthvan and Cianna imposed any fiduciary duties on Cianna. *Id.* Ultimately, the bankruptcy court ruled that "[t]he summary judgment record as a whole establishes that Cianna was . . . a buyer and seller in the transactions at issue" and therefore that "Cianna's affirmative defense that it was a 'mere conduit' fails as a matter of law." *Id.* at 11–12.

Turning to review of the bankruptcy court's ruling, the problem is that the deemed admissions did not prevent Cianna from arguing that it was Ruthven's agent. The deemed admissions establish that Cianna purchased the properties from the mineral owners and then conveyed the properties to Ruthven "for consideration." *Id.* at 10; Bankr. Doc. 350, Pl. Summ. J. App., 1373. Notwithstanding what Cianna admitted, if Cianna were Ruthven's agent, Cianna would have been obligated to Ruthven to use the money Ruthven sent it to purchase the mineral interests Provident wanted. The deemed admissions only prevented Cianna from presenting evidence that the transactions occurred in a way other than what was deemed admitted. For example, in light of the deemed admissions, Cianna could not argue that it never received title to the purchased minerals or never received money from Ruthven. But, even if the transactions were uncharacteristic of a principal-agent relationship, the deemed admissions did not prevent Cianna from presenting evidence that Cianna was obligated to Ruthven, by virtue of an agency relationship, to use money it received from Ruthven to pay the mineral owners. Essentially, the bankruptcy judge took the facts admitted to establish as a matter of law, regardless of Cianna's evidence, that Cianna was not

Ruthven's agent even though no case has held that the present facts establish transferee status or foreclose agent status.

The bankruptcy court's overreliance on the deemed admissions caused it to misapply the summary-judgment standard. The burden was on Segner to establish that Cianna was a transferee under § 550(a). And because mere conduits cannot be transferees, Segner had to show that Cianna had full dominion and control over the funds it received from Ruthven. If Segner met its summary-judgment burden by presenting evidence that Cianna had dominion and control over the funds, the burden shifted to Cianna to present evidence that it lacked dominion and control over the funds. Cianna claims to have presented evidence of a principal-agent relationship under which Cianna was obligated to Ruthven to use the funds received from Ruthven to purchase the properties ultimately transferred to Provident. Instead of disregarding Cianna's argument that it was Ruthven's agent, the bankruptcy judge should have determined whether the evidence Cianna presented was evidence that Cianna was legally obligated to Ruthven to use the funds received from Ruthven in a certain way. Because the bankruptcy judge did not determine whether Cianna presented evidence that it was Ruthven's agent, the bankruptcy court's granting of Segner's motion for summary judgment cannot stand.

C.  *De Novo Application of Summary-Judgment Standard*

The Court will now reapply the summary-judgment standard. Because Segner would have the burden at trial to prove Cianna is a transferee under § 550(a), Segner must present evidence that Cianna is a transferee both to prevail on its motion for summary judgment and to survive Cianna's. And because mere conduits cannot be transferees, Segner must present evidence that Cianna had dominion and control over the funds it received from Segner—that is, that Cianna had the right to

use the funds as it saw fit.

Segner has met its summary-judgment burden. Its evidence falls into two categories. This first category includes evidence pertaining to money it received from Ruthven:

- Cianna received money from Ruthven for each transaction, Doc. 350, Pl. Summ. J. App., 1371–75;

- Cianna put the money from Ruthven in its general operating account, which lacked restrictive styling and was Cianna's only bank account, *id.* at 53–56, 147–50;

- Cianna used its bank account to pay for things unrelated to the transactions at issue and did so while the transactions at issue were occurring, *id.* at 1375, 1397; and

- on its tax return, Cianna labeled monies received from Ruthven as gross receipts or sales, *id.* at 18, 1386–96.

This evidence tends to show that Cianna received money from Ruthven and kept it in a way that demonstrates that it had dominion and control over the money. Segner's second category of evidence pertains to the property Cianna received from the mineral owners and transferred to Ruthven:

- Cianna issued bank drafts to the mineral owners in its own name, not Ruthven's or Provident's, *id* at 61–62;

- Cianna took the titles to the mineral interests in its own name, *id.* at 55–58, 1375, 1386–96, 1398–866; and

- Cianna recorded the title in its own name, *id.*

This evidence shows that Cianna had dominion and control over the funds it received from Ruthven because it indicates that Cianna was acquiring properties and then selling them to Ruthven for a profit. Thus, Segner has met its summary-judgment burden by presenting some evidence that Cianna

exercised dominion and control over the funds it received from Ruthven.

Cianna denies that it was buying and selling properties, contending instead that it was Ruthven's agent and was merely a conduit through which money flowed to the mineral owners and through which property flowed to Ruthven and Provident. Given that Segner has presented evidence that Cianna had dominion and control over the funds received from Ruthven, Cianna must present evidence that it lacked dominion and control over the funds to survive summary judgment. Cianna relies on the following as evidence that it was Ruthven's agent and therefore lacked the right to use the funds as it saw fit:

- Cianna's principal, Kyle Shutt, claims that Ruthven informed Cianna of the areas in which Provident was interested and that Provident and Ruthven approved all of Cianna's purchases, Bankr. Doc. 353, Def. Summ. J. App., 102–03;

- Cianna and Ruthven signed a Sub-Broker's Agreement that said Cianna was to assist Ruthven in acquiring mineral interests, keep information about the prospective area received from Ruthven confidential, and refrain from acquiring mineral interests for itself in Provident's areas of interest, *id.* at 55;

- the bank drafts Cianna executed with the mineral owners did not obligate Cianna to pay the mineral owners until Cianna received money from Ruthven to cover the transaction, *id.* at 102–03; and

- Cianna paid the mineral owners only after receiving money from Ruthven to cover the transaction, *id.* at 7, 102–03.

The Court must determine whether Cianna's evidence is evidence of an agency relationship.

Oklahoma law[6] "does not presume an agency status is present." *Enter. Mgmt. Consultants, Inc. v. State ex rel. Okla. Tax Comm'n*, 768 P.2d 359, 362 (Okla. 1988). Thus, because Cianna asserted it was Ruthven's agent, Cianna had the burden to establish "the existence, nature, and extent of the agency relationship." *Id.* "Brokers are a species of agent." *Id.* But although Cianna and Ruthven signed a Sub-Broker's Agreement, contractual labels are not dispositive on the issue of whether an agency relationship existed. For Cianna to have been Ruthven's agent, the facts must indicate that Ruthven and Cianna intended to enter into an agency relationship with one another. *Id.*

The statute of frauds is also relevant in this case. Under Oklahoma law, an agreement made by a broker or agent to purchase an interest in real property is invalid "unless the authority of the agent or the broker be in writing, subscribed by the party sought to be charged." Okla. Stat. tit. 15, § 136(4). A mineral interest is real property in Oklahoma. *Cox v. Lasley*, 639 P.2d 1219, 1221 (Okla. 1981).

Here, Cianna has presented no evidence that it was Ruthven's agent. Because Cianna claims to have been Ruthven's agent in purchases of mineral interests, Ruthven must have conferred agent status on Cianna in a signed writing. Although Cianna and Ruthven signed the Sub-Broker's Agreement, the agreement says only that Cianna would assist Ruthven in acquiring property for Provident, the agreement does not explicitly authorize Cianna to purchase property as Ruthven's agent. Bankr. Doc. 366, Pl. Summ. J. Reply App., 1. In fact, the agreement prohibits Cianna from acquiring mineral interests, stating instead that Cianna "may propose" that Ruthven pursue mineral interests on behalf of Provident. *Id.* at 4. Thus, because the statute of frauds required a conferral of

---

[6]Ruthven and Cianna chose Oklahoma law to govern their relationship. Bankr. Doc. 366, Pl. Summ. J. Reply App., 8.

authority on Cianna by Ruthven to purchase mineral interests to be in writing, and because the agreement did not confer on Cianna the authority to purchase mineral interests on behalf of Ruthven, Cianna has no evidence that it was Ruthven's agent.

But even if the Sub-Broker's agreement complied with the statute of frauds, Cianna has presented no evidence establishing the existence of an agency relationship between it and Ruthven. *Appleby v. Kewanee Oil Co.* exemplifies how Oklahoma agency principles apply to putative mineral brokers. 279 F.2d 334 (10th Cir. 1960). In *Appleby,* the Tenth Circuit applied Oklahoma law to determine whether an agency relationship existed between Kewanee Oil Company and M. P. Appleby. *Id.* at 336. Appleby alleged that he offered to procure for Kewanee certain mineral leases and provide Kewanee with "engineering data" about the leases in exchange for $20,000; that Kewanee accepted his offer; that after Appleby furnished the data, Kewanee said it was not interested in the leases; and that Kewanee purchased the leases itself without paying Appleby. *Id.* at 335. Appleby sued for the $20,000, but Kewanee denied liability on the grounds that Appleby did not inform Kewanee that he was acting as an agent for another. *Id.* The jury awarded Appleby $20,000, but the judge issued judgment n.o.v. for Kewanee, finding Appleby to have been an unfaithful agent to Kewanee by trying to realize a secret profit. *Id.*

The Tenth Circuit reversed. *Id.* at 337. The court assumed that the question of whether Appleby was Kewanee's agent was properly submitted to the jury and therefore viewed its task as determining whether there was evidence to support the jury's implicit finding that Appleby was not Kewanee's agent. *Id.* at 335–36. The Tenth Circuit stated that an agency relationship exists under Oklahoma law "if the conduct of the parties manifests that 'one of them is willing for the other to act for him subject to his control, and that the other consents so to act.'" *Id.* at 336 (quoting *Farmers*

*Nat. Gran Corp. v. Young*, 102 P.2d 180, 181 (Okla. 1940)). Kewanee argued on appeal that Appleby could be its "broker" without being under its control. *Id.* The Tenth Circuit does not say why Kewanee argued this, but because Kewanee needed Appleby to be its agent to avoid liability, Kewanee was probably trying to establish that Appleby could be its agent without being under its control. The Tenth Circuit noted that "a broker is but a species of agent who may also be an independent contractor" but also that "the cornerstone of the agency relationship is the right of the principal 'to give lawful directions which the agent is under a duty to obey if he continues to act as such.'" *Id.* (quoting Restatement (second) of Agency § 14 cmt. b. (Am. Law Inst. 1958)). Because the evidence provided "a reasonable factual basis for saying that Kewanee lacked [the] requisite right of control" over Appleby for Appleby to have been Kewanee's agent, the Tenth Circuit ordered the trial court to reinstate the jury's verdict. *Id.* In short, *Appleby* indicates that, under Oklahoma law, Cianna must present evidence that Ruthven had the right to control Cianna in the transactions at issue.

But Cianna has presented no evidence that Ruthven had the right to control it that is "the cornerstone of the agency relationship." The Sub-Broker's Agreement does not evince a right of Ruthven to control Cianna. The agreement never explicitly created an agency relationship or otherwise conferred a right of control on Ruthven but merely said Cianna would assist Ruthven in acquiring mineral interests by proposing transactions to Ruthven. Bankr. Doc. 366, Pl. Summ. J. Reply App., 4. Cianna harps on the fact that the agreement prohibited Cianna from acquiring interests in the prospective areas. But that the arrangement among Provident, Ruthven, and Cianna prevented Ruthven and Cianna from competing with Provident is no basis for inferring that Ruthven had the requisite right of control over Cianna for Cianna to have been Ruthven's agent. At most,

the agreement demonstrates Provident's wish to insulate itself from competition with those with whom it shared its proprietary information about mineral prospects. *Id.* at 1.

Nor does the structure of the transactions evince a right of Ruthven to control Cianna. Although the bank drafts Cianna executed with the mineral owners obligated Cianna to pay the mineral owners after receiving funds from Ruthven and although Cianna paid the mineral owners only after receiving funds from Ruthven, nothing about the transactions show that Cianna had to pay or did pay the mineral owners because Cianna was obligated to Ruthven to do so. There is simply no evidence to indicate that these transactions were anything other than a series of transactions in which Cianna sold mineral interests to Ruthven but sought to guarantee itself profitability by obligating itself to pay mineral owners only after receiving money from Ruthven to cover the purchase price. Thus, because Cianna has presented no evidence of an agency relationship between it and Ruthven—and therefore no evidence that it lacked dominion and control over the funds received from Ruthven—the Court rules that its prior order granting Segner's motion for partial summary judgment stands.

## IV.

### CONCLUSION

Although the bankruptcy judge's reasoning did not support granting Segner's motion for summary judgment, the bankruptcy judge's outcome was correct. Because Segner presented evidence that Cianna had dominion and control over the funds Cianna received from Segner and because Cianna presented no evidence that it lacked dominion and control over the funds, the Court **DENIES** Cianna's motion for reconsideration. Thus, the Court's prior order granting Segner's motion for summary judgment stands. Cianna may not argue at trial that it was a mere conduit

rather than a transferee as to any part of the funds it received from Ruthven.


SO ORDERED.

SIGNED: March 8, 2018

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE