# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

MILO H. SEGNER, JR, as Liquidating §
Trustee of the PR Liquidating Trust, §
§
   Plaintiff, §
§
v. §   CIVIL ACTION NO. 3:12-CV-1318-B
§
RUTHVEN OIL & GAS, LLC, ET AL., §
§
   Defendants. §

## MEMORANDUM OPINION AND ORDER

In this bankruptcy dispute, trustee Milo Segner (Segner) seeks to recover about $21.7 million of fraudulently transferred money from Cianna Resources, Inc (Cianna). The only issue at trial was whether Cianna could avoid liability by showing that it received the money in exchange for value, in good faith, and without knowledge that the transfer was avoidable. A jury returned a verdict for Cianna. And Segner responded by moving for judgment as a matter of law and for a new trial. The Court **DENIES** both motions.

## I.

## BACKGROUND[1]

A.   *Factual History*

Provident Royalties, LLC (Provident) engaged Ruthven Oil & Gas, LLC (Ruthven) to help it find and acquire mineral interests. Doc. 299-10, Pl. Mot. New Trial App., Ex. J. Ruthven approached Cianna to help it help Provident by acquiring mineral interests in certain Oklahoma

---

[1] This factual history is drawn from the evidence presented at trial and earlier stages of the case.

counties Provident specified. Trial Tr. Vol. I, 87–88. In a series of 197 transactions, Cianna acquired the mineral interests and transferred them to Ruthven, Doc. 299-7, Pl. Mot. New Trial App., Ex. G. Corresponding sums of money flowed from Provident to Ruthven to Cianna to the mineral owners. *Id.* Cianna received $500 per acre acquired in compensation. Trial Tr. Vol. I, 88. Overall, Provident transferred $48,812,882.24 to Ruthven, Doc. 100, Adopted Findings of Fact and Conclusions of Law, 2, and Ruthven sent $21,117,572.79 to Cianna. Bankr. Doc. 423-1, Am. Ruling, 25.

B.      *Procedural History*

Provident filed for bankruptcy in June 2009, Bankr. Doc. 1, Compl., ¶ 24, and, in June 2011, Milo Segner filed this adversary proceeding in the bankruptcy court against Ruthven, Cianna, and others. *Id.* ¶ 1. The defendants moved in April 2012 to withdraw the reference from the bankruptcy court. Doc. 1, Mot. for Withdrawal of Reference. The case was reassigned to this Court in May 2013, Doc. 34, but the Court referred the case back to the bankruptcy court for pretrial matters to be resolved, Doc. 73, Order of Reference. After de novo review of a report and recommendation of the bankruptcy judge in September 2015, this Court determined that Provident's transfer of the $48,812,882.24 to Ruthven and subsequent transfers of that money by Ruthven, including the transfers to Cianna now at issue, are avoidable under 11 U.S.C. § 548(a)(1)(A). Doc. 100, Mem. Op. & Order, 2. And in November 2015, the Court dismissed Segner's claims against all of the defendants except for Cianna pursuant to a settlement agreement. Electronic Order Granting Doc. 105 Motion for Voluntary Dismissal of Claims.

After the settlement and a summary-judgment ruling establishing that Cianna was a

transferee[2] as to the $21,117,572.79 it received from Provident via Ruthven, Doc. 242, Mem. Op. & Order, the only remaining issue was whether Cianna could establish the affirmative defense that required it to show that it received the money in exchange for value, in good faith, and without knowledge that the transfers were avoidable. *See* 11 U.S.C. § 550(b).[3] On that issue, a jury returned a verdict for Cianna. Doc. 296, Jury Verdict. Now, dissatisfied with the verdict and many of the Court's trial-related rulings, Segner has moved for judgment as a matter of law and a new trial. Doc. 297, Mot. J. as Matter of Law; Doc. 300, Mot. New Trial. The motions are ripe for review.

## II.

## LEGAL STANDARD

A.      *Rule 50(b): Motion for Judgement as a Matter of Law*

A court should grant a motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b) only if "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Cano v. Bexar Co.*, 280 F. Appx. 404, 406 (5th Cir. 2008) (internal citations omitted). The Court "should consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion." *Mosley v. Excel Corp.*, 109 F.3d 1006, 1008–09 (5th Cir. 1997). The court must not make credibility decisions or weigh the evidence in making its determination.

---

[2] A bankruptcy trustee can recover only from a transferee. 11 U.S.C. § 550(a).

[3] Section 550(b) states,
   The trustee may not recover under section (a)(2) of this section from
      (1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or
      (2) any immediate or mediate good faith transferee of such transferee.

*Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000).

B.    *Rule 59: Motion for New Trial*

A Court can "grant a new trial . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). In this Circuit, a district court can grant a new trial if "the verdict is against the great weight of the evidence . . . the trial was unfair, or prejudicial error was committed. *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985). Courts are to decide whether to grant a new trial based on their assessment of the fairness of the trial and the reliability of the jury's verdict. *Seidman v. Am. Airlines, Inc.*, 923 F.2d 1134, 1140 (5th Cir. 1991). And the decision whether to grant a new trial is "within the sound discretion of the trial court." *Shows v. Jamison Bedding, Inc.*, 671 F.2d 927, 930 (5th Cir. 1982)).

## III.

## ANALYSIS

If a transfer is avoidable under the Bankruptcy Code, as the transfers to Cianna are, "the trustee may recover, for the benefit of the estate, the property transferred . . . from (1) the initial transferee of such transfer or . . . (2) any immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550(a). But "[t]he trustee may not recover under section (a)(2) of this section from (1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided." § 550(b)(1). Cianna bore the burden at trial of establishing the elements of § 550(b)(1).

A.    *Rule 50(b): Motion for Judgment as a Matter of Law*

Segner argues that the Court should award it judgment as a matter of law on Cianna's

§ 550(b) defense for five[4] reasons.

1.     <u>Oklahoma Documentary Stamp Act and Cianna's Good Faith</u>

Segner argues that its evidence that Cianna violated the Oklahoma Documentary Stamp Tax Act (ODSTA) establishes as a matter of law that Cianna did not receive the money from Ruthven in good faith. Doc. 298, Pl. Mot. J. as Matter of Law Br., 1. But Segner's argument ignores that Cianna's good faith hinged on what it knew or should have known about Provident. *See In re Am. Hous. Found.*, 785 F.3d 143, 164 (5th Cir. 2015) (noting in fraudulent-transfer case that good-faith inquiry looks "to whether the [transferee] was on notice of the debtor's insolvency or the fraudulent nature of the transaction"). That Cianna overstated on ODSTA documents the value of the interests it transferred does not establish as a matter of law that Cianna knew or should have known that Provident was defrauding its investors. Of course, Segner characterized Cianna's stamp-tax misrepresentations as evidence that Cianna was part of, knew of, or should have known of Provident's scheme, but the jury disagreed. The Court will not disturb the jury's decision.

Segner now says the UCC's definition of good faith governs this case rather than the good-faith standard in the jury charge. Doc. 298, Pl. Mot. J. as Matter of Law Br., 2. But Segner waived this argument by not asking for the UCC definition to be included in the jury charge. *See* Doc. 228, Pl. Proposed Jury Instructions, 12.

Even if Segner did not waive this argument, the UCC's definition does not govern this case. Untethered from a transferee's knowledge of the bankrupt's relationship with its creditors, the UCC

---

[4] Segner's fifth reason is that the jury's verdict was against the great weight of the evidence. The Court will address this argument in its discussion of Segner's motion for a new trial. Doc. 298, Pl. Mot. J. as Matter of Law Br., 16.

definition of good faith requires only honesty in fact and observance of reasonable commercial standards. Doc. 298, Pl. Mot. J. as Matter of Law Br., 2. The bankruptcy code does not include the UCC's definition, and Courts in this circuit have applied a definition of good faith tied to a transferee's knowledge or constructive knowledge of the bankrupt's financial situation, *Am. Hous.*, 785 F.3d at 164. The Court thus declines to apply the UCC's definition of good faith. Doc. 298, Pl. Mot. J. as Matter of Law Br., 2.

Segner's argument fails even under the UCC standard. Segner seems to propose a rule under which, if a party violates a law in the process of entering into a transaction, a court must find as a matter of law that the party did not enter into that transaction in good faith. Doc. 298, Pl. Mot. J. as Matter of Law Br., 4. Segner's rule is untenable. Surely a contracting party who violated the speed limit while driving to a contract closing would not transact bad faith by driving too fast.

Nor do the cases Segner cites support its conclusion that Cianna acted in bad faith. In *Rudiger Charolais Ranches v. Van de Graaf Ranches*, a rancher sold cattle to a merchant, who sold the cattle to a buyer. 994 F.2d 670, 671 (9th Cir. 1993). The buyer paid for and received the cattle but did not verify that the merchant owned the cattle. *Id.* After the merchant never paid the Rancher for the cattle, the rancher sought to recover from the buyer. *Id.* For the buyer to have held good title under Washington law, he had to have received the cattle in good faith. *Id.* at 672. And to have received the cattle in good faith, the buyer must have observed reasonable commercial standards when he purchased it. *Id.* The court found as a matter of law that the buyer did not observe reasonable commercial standards because he violated a Washington cattle-rustling-prevention statute by taking possession of the cattle without verifying that the merchant owned the cattle. *Id.* at 673. Segner says Cianna cannot have acted in good faith because, like the buyer, it violated the law—by lying on the

ODSTA. Doc. 298, Pl. Mot. J. as Matter of Law Br., 6.

This case is different from *Rudiger*. In *Rudiger*, the statute the rancher sought to enforce allowed buyers to keep stolen property if they observed reasonable commercial standards when they purchased the property. *Rudiger*, 994 F.2d at 672. Another statute required cattle buyers to take title papers with the purchased cattle to prevent cattle rustling. *Id.* Here, like in *Rudiger*, § 550(b) allows Cianna to keep what it received from Ruthven if it received the property in good faith. But unlike the cattle-rustling statute in *Rudiger*, the ODSTA is irrelevant to the question of whether a purchaser is receiving something to which another person might actually be entitled; it merely imposes a tax on transactions. This case would be like *Rudiger* had Cianna violated a statute requiring it to determine whether the funds it received might be claimed by anyone else, such as Provident's creditors. Because the ODSTA imposed no such obligation on Cianna, Segner's reliance on *Rudiger* is misguided.

So is Segner's reliance on *Philadelphia Gear Corp. v. Central Bank*, 717 F.2d 230 (5th Cir. 2001). There, a bank issued a letter of credit to a company. *Id.* at 232. To use the credit, the company had to submit drafts to the bank, and the drafts had to conform to the letter of credit's requirements. *Id.* The company submitted a number of drafts to the bank that did not follow the letter's requirements, and the company knew the drafts did not comply with the letter. *Id.* at 233. When the bank refused to honor the drafts, the company sued. *Id.* State law incorporated a duty of good faith into every contract and provided that, by presenting a draft, a beneficiary of a letter of credit warranted that the draft complied with the letter of credit. *Id.* at 238. The Fifth Circuit held that the company breached both duties by knowingly submitting nonconforming drafts and therefore could not recover. *Id.* Segner contends that Cianna should lose in this case because, like the

company knowingly submitted nonconforming drafts to the bank, Cianna knowingly misrepresented the value of mineral interests on ODSTA documents. Doc. 298, Pl. Mot. J. as Matter of Law Br., 4–5.

Segner is incorrect. In *Philadelphia Gear Corp.*, the company acted in bad faith by breaching duties to the bank with which it contracted. *Phila. Gear. Corp.*, 717 F.2d at 238. But here, Segner does not complain that Cianna deceived Ruthven or breached any duty it owed Ruthven by lying on the ODSTA. Because Segner does not argue that Cianna breached a duty to Ruthven by violating the ODSTA, *Philadelphia Gear Corp.* does not compel the conclusion that Cianna acted in bad faith as a matter of law. The Court thus rejects Segner's ODSTA argument.

### 2. Unconscionability, Good Faith, and Value

Segner asks the Court to rule that the contracts in which Cianna transferred the mineral interests to Ruthven in exchange for the $21 million were unconscionable. Doc. 298, Pl. Mot. J. as Matter of Law Br., 6. And once the Court finds the contracts were unconscionable, Segner contends, the Court must find that Cianna did not receive the money in good faith or for value as a matter of law. *Id.* at 7. Segner correctly contends that unconscionability is an issue of law the Court must decide. *Hoover Slovacek LLP v. Walton*, 206 S.W.3d 557, 562 (Tex. 2006). But although courts have held that value under § 550(b) must be sufficient to support a contract,[5] Segner has cited no cases indicating that a federal court can take a § 550(b) affirmative defense away from a jury by finding that the transfer at issue involved an unconscionable contract.

---

[5] *See* 5 Alan N. Resnick & Henry J. Sommer, <u>Collier on Bankruptcy</u> ¶ 550.03[1] at 550 (16th ed.) ("The 'value' required to be paid by a secondary transferee is merely consideration sufficient to support a simple contract . . . There is no requirement that the value given by the transferee be a reasonable or fair equivalent.").

This Court will not be the first. Importing the unconscionability doctrine would frustrate the purpose of § 550. Sections 550(a) and 550(b) strike a balance between protecting the creditors of bankrupt entities and entities who have received money from bankrupt entities in bona fide business transactions not designed to defraud creditors. Section 550(a) authorizes trustees to recover avoidable transfers, but § 550(b) prevents trustees from recovering avoidable transfers from subsequent transferees "that take[] for value, . . ., in good faith, and without knowledge of the voidability of the transfer. § 550(b)(1). An unconscionability finding could defeat a § 550(b) affirmative defense absent any reason to suspect fraud on creditors—thereby subverting § 550(b)'s protections for legitimate business transactions.

For example, before declaring bankruptcy, a debtor engages in an avoidable transaction with an immediate transferee. The entity pays the immediate transferee $1 million. Then, the immediate transferee, an expert artifact-collector, transfers the $1 million to an unsophisticated elderly couple in exchange for a rare artifact worth $10 billion. The elderly couple has no idea what the artifact is. The bankruptcy trustee cannot recover from the collector—who absconded with the artifact and left nothing behind. So the trustee goes after the elderly couple for the $1 million. If the Court were to find the contract unconscionable, the already-fleeced elderly couple would have to return the $1 million to the creditors of the bankrupt even though nothing indicates that they were in on, knew of, or should have known of any fraud on creditors. That would be absurd. On the other hand, if a trustee sued the elderly couple, there were a trial on the couple's § 550(b) defense, and the court instructed the jury as the Court instructed the jury in this case, the jury would likely find for the couple, as the couple gave some value in return for the artifact and was unaware of any fraud on creditors. The Court declines to subvert the bankruptcy code's protections for good-faith transferees

by independently determining that the contracts between Ruthven and Cianna were unconscionable.

3.      Measure of Value

Segner contends it deserves judgment as a matter of law because Cianna had to present evidence regarding the value of the mineral interests it transferred to Ruthven but did not. Doc. 298, Pl. Mot. J. as Matter of Law Br., 12.

The Court disagrees. Cianna needed to show only value sufficient to support a contract. Doc. 295, Jury Charge, 9; *supra* note 6. The jury heard evidence that Ruthven engaged Cianna to acquire mineral interests in certain areas in Oklahoma. Trial Tr. Vol. I, 87–88. The jury heard evidence also that Cianna found, acquired, and transferred to Ruthven the mineral interests, Doc. 299-7, Pl. Mot. New Trial App., Ex. G, and warranted title to those interests, Trial Tr. Vol. II, 161. Based on that evidence, the jury could have reasonably found that Cianna met the value requirement by doing what Ruthven asked.

Segner's argument that the Court's "mere-conduit" ruling required Cianna to meet § 550(b)'s value element by proving the value of the mineral interests it transferred to Cianna is incorrect. Doc. 298, Pl. Mot. J. as Matter of Law Br., 12. The ruling to which Seger refers is the summary-judgment order[6] in which the Court ruled that Cianna failed to create an issue of material fact as to whether it was a transferee under § 550(a) and therefore that Cianna was a transferee as to the $21 million as a matter of law. Doc. 242, Mem. Op. & Order, 17–18. Segner takes the Court's order to establish also, as a matter of fact, that Cianna could not have provided anything of value in its dealings with Ruthven other than mineral interests. Doc. 298, Pl. Mot. J. as Matter of Law Br., 13. But Segner is

---

[6] The order was actually on Cianna's motion to reconsider the Court's original summary-judgment ruling.

wrong; the Court made no factual findings in the order. Although the Court found that Cianna failed to present evidence that it was not a transferee, the Court's ruling in no way required Cianna to present evidence of the value of the mineral interests it transferred to Ruthven to meet § 550(b)'s value element.

### 4. Transfer-By-Transfer

Segner argues that it is entitled to judgment as a matter of law because Cianna failed to establish the elements of § 550(b) for each of the 197 transfers. Doc. 298, Pl. Mot. J. as Matter of Law Br., 16. But the evidence permitted the jury to find that Cianna met § 550(b)'s elements for each of the transactions. *See infra* Section III.B.4.

### B. *Rule 59(a): Motion for New Trial*

Segner argues that the Court should order a new trial for four reasons. Doc. 301-1, Pl. Mot. New Trial Br.

### 1. Prejudice Resulting from Discussion of Attorney Fees

Segner complains that Cianna's discussion of attorney fees during Segner's testimony and closing argument irreversibly prejudiced the jury against Segner. Doc. 301-1, Pl. Mot. New Trial Br., 2. Before trial, the Court granted Segner's fourth motion in limine, Doc. 268, Order on Pl. Mots. in Limine, which sought to prevent Cianna from discussing "professional fees incurred in prosecuting litigation on behalf of the PR Liquidating Trust," Doc. 222, Pl. Mots. in Limine, 3. During Cianna's cross examination of Segner, Cianna asked Segner how much the trust had paid in attorney fees. Trial Tr. Vol. III, 272. Segner responded $30 million. *Id.* Early the next morning, the Court instructed the jury to disregard the discussion of attorney's fees from the previous day. Trial Tr. Vol. IV, 38–40. Before closing arguments, the Court instructed the jury that closing statements are not

evidence. Trial Tr. Vol. VI, 44. And during closing arguments, Cianna's attorney said,

> Now, you know, these guys are—they are great lawyers, dream team. They are really good lawyers. But we're talking about somebody's life here. $21 million is—is not something that you can just go cut a check for. You're talking about ruining lives for the sake of putting money in their pockets.

> Now, you have to follow the Court's instructions. I recognize that. And I'm not suggesting that you don't. But what I am telling you here is if you check no to all three questions and you don't check yes to all three questions, that's what's going to happen.

*Id.* at 122.

Neither instance of Cianna mentioning attorney fees warrants a new trial. Both the quality of the challenged statements and two other events at trial minimized any prejudice Segner suffered. First, the Court instructed the jury to disregard Segner's testimony that the PR Liquidating Trust spent $30 million in attorney fees, Trial Tr. Vol. IV, 38–40, and the Court instructed the jury that the lawyers' closing arguments were not evidence, Trial Tr. Vol. VI, 44. Because the Court must presume the jury followed its instructions, *see Weeks v. Angelone*, 528 U.S. 225, 234 (2000), the Court's limiting instructions cut against Segner's argument. Second, during cross, Segner testified that his firm charged the trust roughly $4.5 million in fees and that he personally received from the trust a contingency fee of 1.5% on recoveries. Trial Tr. Vol. III, 74–75. Segner's attorneys did not object to this testimony and did not challenge it in its motion for a new trial. Because Segner's testimony about his and his firm's fee arrangements with the trust demonstrated to the jury Segner's stake in the outcome of this case, Segner's testimony about the $30 million in attorney fees likely did not significantly and unfairly prejudice the jury against Segner given what the jury already knew about his fees. The Court thus finds that Segner was not prejudiced enough to deserve a trial.

The cases Segner cites do not counsel otherwise. In both *Hollybrook Cottonseed Processing,*

*L.L.C. v. American Guaranty & Liability Insurance Co.*, and *Dun & Bradstreet, Inc. v. Miller*, the Fifth Circuit affirmed orders granting new trials because no evidence supported the juries' verdicts; only prejudice could explain the juries' decisions. 772 F.3d 1031, 1034 (5th Cir. 2014); 398 F.2d 218, 226 (5th Cir. 1968). This case is difference because ample evidence supports the jury's verdict. *See infra* Section III.B.4.

Nor is *Pollock & Riley, Inc. v. Pearl Brewing Co.*, 498 F.2d 1240 (5th Cir. 1974), apposite. *Pollock & Riley* was not a new-trial case but a pair of interlocutory appeals in which the Fifth Circuit decided that trial courts should not instruct juries about the treble-damages provisions of the federal antitrust laws because instructing the juries about the provisions might cause juries to award less damages even though the purpose of the treble-damages provisions was to deter antitrust violations. *Id.* at 1242–43. The case says nothing about the prejudice required for a trial court to grant a new trial. Segner contends that just as instructing juries about the treble-damages provisions would have undesirable effects on juries, Cianna's discussion of attorney fees was so prejudicial that the Court must grant a new trial. Doc. 301-1, Pl. Mot. New Trial, 6. But even if Cianna's mention the attorney fees was prejudicial, it was not prejudicial enough to warrant a new trial, especially in light of the Court's limiting instructions.

*Edwards v. Sears, Roebuck & Co.*, 512 F.2d 276 (5th Cir. 1975), is also inapposite. *Edwards* was a wrongful-death case in which the Fifth Circuit said a trial court should have granted a new trial based on statements plaintiff's counsel made during closing argument. *Id.* at 279. Material facts not in evidence and inflammatory emotional appeals pervaded the plaintiff's counsel's closing. *Id.* at 284. Counsel discussed the value his son would place on his life, played on his friendship with the deceased, who he met in seminary, "evoked the image of the deceased's children crying at graveside

and forlornly awaiting the return of their father," and urged the jury of a need for retributive payments. *Id.* at 285. This case is different from *Edwards* for two reasons. First, Segner does not complain that Cianna's counsel introduced facts not in evidence; Segner complains only about that counsel's remarks inflamed and prejudiced the jury against Segner. Second, Cianna's counsel's comments were not as inflammatory as the comments in *Edwards*. Mentioning that Segner and his attorneys stood to gain from a plaintiff's verdict was not nearly as inflammatory as invoking father–son bonds and children crying at a deceased's graveside in a wrongful-death case. The Court thus declines to order a new trial based on Cianna's fee-related comments.

2.     Transfer-By-Transfer

Segner argues that the Court should have required the jury to answer whether Cianna met the § 550(b) elements separately for each of the 197 interests that Cianna transferred to Ruthven. Doc. 301-1, Pl. Mot. New Trial, 8. Erroneous jury instructions warrant a new trial only if they leave the Court with substantial and ineradicable doubt as to whether the jury has been properly guided in its deliberations. *Ganz v. Lyons P'ship, L.P.*, 961 F. Supp. 981, 996 (N.D. Tex. 1997).

The Court disagrees with Segner. Section 550(b) provides elements a transferee must meet for each avoided transfer. 11 U.S.C. § 550(b)(1). Thus in a case like this one involving multiple avoided transactions, a defendant must meet § 550(b)'s elements for each transaction to avoid liability. But even though a defendant must meet each element for each transaction, the same facts could establish § 550(b)'s elements for multiple transactions. Thus, § 550(b) does not generally require transaction-by-transaction jury questionnaires.

Nor do Segner's cases. Relying on *In Re SGSM Acquisition Co.*, 439 F.3d 233, 241 (5th Cir. 2006), Segner says the Fifth Circuit requires trial courts in § 550(b) cases to submit separate

questions to juries for each transaction at issue, Doc. 301-1, Pl. Mot. New Trial, 10. Segner is wrong.

*In Re SGSM* applied § 547(c)(4), not § 550(b). Under § 547(c)(4),

> a trustee may not avoid a transfer to or for the benefit of a creditor, to the extent that, after such transfer such creditor gave new value to or for the benefit of the debtor-(A) not secured by an otherwise unavoidable security interest; and (B) on the account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor.

11 U.S.C. § 547(c)(4). In a prior case, the Fifth Circuit rejected the "net result rule, under which 'all new value from subsequent advances was totaled and deducted from all eligible preference payments,'" in favor of a "trasfer-by-transfer approach that asks whether '(1) new value was extended after the preferential payment sought to be avoided, (2) the new value is not secured with an otherwise unavoidable security interest, and (3) the new value has not been repaid with an otherwise unavoidable transfer.'" *SGSM Acquisition Co.*, 439 F.3d at 241 (quoting *Laker v. Vallette (In Re Toyota of Jefferson, Inc.)*, 14 F.3d 1088, 1093 n.2 (5th Cir. 1999)). The case says nothing about § 550(b) much less about how jury charges must be worded.

Segner relies also on *In Re Provident Royalties, LLC*, 581 B.R. 185 (Bankr. N.D. Tex. 2017), an earlier opinion in this case. Doc. 301-1, Pl. Mot. New Trial, 10. In the opinion, the bankruptcy judge applied the single-satisfaction rule, which prevents a trustee from recovering more than a debtor transferred. *Provident Royalties*, 581 B.R. at 188–89. The bankruptcy judge determined that it had to look at each transaction that resulted in money flowing from Provident to Ruthven to Cianna to apply the single-satisfaction rule. *Id.* at 195. The opinion had nothing to do with the § 550(b) affirmative defense and does not indicate that the jury had to answer separate questions for each of the Ruthven–Cianna transfers.

Nor does *In Re Ramirez*, No. 09-7004, 2011 WL 30973 (S.D. Tex. Jan. 5, 2011), help Segner.

There the court had to determine whether three transactions were fraudulent, and therefore avoidable, under Texas law. *Id.* at *3–4. The case involved neither federal law nor a jury trial. *Id.* And all the court said was that it had to determine whether each of the transactions was fraudulent. *Id.* at 4. The Court said nothing about how courts must instruct juries in § 550(b) cases, or about whether separate proof was required for each transaction.

Nothing about the facts of this case require a transfer-by-transfer jury questionnaire either. Segner responds that the transactions were different from one another because the amount of red flags indicating fraud increased over time such that Cianna was less likely to meet § 550(b)'s requirements for later transactions than earlier ones. Doc. 301-1, Pl. Mot. New Trial, 11. But although the alleged red flags arose over time, Segner never argued that the court or jury should view later transactions differently than earlier ones. The jury moreover could have reasonably believed that evidence pertaining to all of the transactions showed that Cianna met § 550(b)'s elements for each transaction. After all, Kyle Shutt testified that he had no dealings with Provident, no knowledge of Provident or Ruthven engaging in conduct indicating fraud on Provident's creditors, and that the transactions at issue were consistent with Cianna's normal business practices. Trial Tr. Vol. II, 43, 59, 170. And that testimony applies to all of the transactions.

Segner argues also that the Court's failure to submit the case to the jury transfer by transfer prevented the jury from applying the evidence to § 550(b)'s value element because one aspect of Cianna's value defense was that it gave value in the form of signing non-compete and non-disclosure agreements. Doc. 301-1, Pl. Mot. New Trial, 13. According to Segner, because Cianna signed the agreements after it had completed many of the transactions at issue, any value given in the form of the agreements could have applied only to transactions that occurred after Cianna signed the

agreements. *Id.* But signing the agreements was only one potential source of value. The jury heard evidence of value applicable to all of the transactions: Cianna found and acquired the mineral interests and warranted title in the transactions. Doc. 299-7, Pl. Mot. New Trial App., Ex. G; Trial Tr. Vol. II, 161. Because the jury could have reasonably relied on the sources of value applicable to all of the transactions, the Court declines to issue a new trial based on jury-instruction error.

### 3. Effect of Prior Findings

Segner challenges the Court's treatment of prior findings in two ways and attacks five of the Court's rulings in limine. Doc. 301-1, Pl. Mot. New Trial, 14.

#### a. *The Court's Summary-Judgment Ruling that Cianna is a Transferee*

Segner argues that the Court erred by permitting Cianna to introduce evidence contradicting the Court's summary-judgment ruling that Cianna was a transferee as to the funds it received from Ruthven. *Id.* Segner complains specifically that Cianna's evidence and argument regarding how it spent the money it received from Ruthven was a "disguised conduit argument." *Id.* at 15.

Segner is incorrect. Cianna's evidence and argument that it did not keep all of the funds it received from Ruthven did not contradict the Court's ruling because Cianna introduced evidence of how it spent the money it received to show it acted in good faith, not to argue that it is not liable for amounts it spent. Doc. 317, Def. Mot. New Trial. Resp. Br., 22.

#### b. *Prior Findings Regarding the Provident Scheme*

Segner argues that the Court should have allowed him to share certain "summary-judgment findings" regarding Provident insiders' criminal convictions and prior dealings as well as actions the Securities and Exchange Commission took in response to the Provident scheme. Doc. 301-1, Pl. Mot. New Trial, 16. But the Court allowed Seger to present to the jury much of what it wanted. The

Court allowed Segner to elicit from Dennis Roossien testimony about the double-flip pattern Joe Blimline used in the Provident scheme and past fraudulent schemes, Joe Blimline's criminal conviction and admission of fraud, and findings regarding Provident's fraudulent nature, and admitted evidence of kickbacks and inflated prices. Trial Tr. Vol. III, 206, 215; Vol. IV, 29; Vol. V, 17–21. Segner can really only complain that the Court should have let the evidence in earlier. But because the Court ultimately allowed much of the evidence and argument based on it, the Court's initial decision to exclude the evidence was not prejudicial enough to warrant a new trial.

        c.      *Orders in Limine*

Segner argues that the Court's rulings on five of Cianna's motions in limine gave Cianna an unfair advantage that only a new trial can cure. June 25, 2018. Doc. 301-1, Pl. Mot. New Trial, 21. The Court will address each of the five challenged rulings.

Segner first claims that the Court should not have prohibited Segner from presenting evidence that the same counsel that represented Ruthven and the Provident criminal defendants represented Cianna earlier in these proceedings. *Id.* at 21. The Court's ruling was unfair, according to Segner, because Cianna presented evidence that Segner had relentlessly pursued Cianna for seven years, but, because of the Court's ruling, Segner could not present evidence that this case has taken so long in part because of Cianna's decision to be represented an attorney who also represented Ruthven and the Provident criminal defendants. *Id.* But Segner waived its objection to this ruling by failing to offer the excluded evidence at trial. Regardless, Segner's argument lacks merit. Why these proceedings have lasted for so long was hardly relevant to the issues before the jury, so keeping out evidence of Cianna's prior counsel did not prejudice Segner enough for the Court to order a new trial.

Second, Segner challenges the Court's decision to exclude evidence of how Kyle Shutt spent the money Cianna received from Ruthven. *Id.* Segner wanted to present evidence that, at the relevant time, Shutt purchased a Jaguar and two "modern art 'snake' lamps" for about $233,000. *Id.* Segner contends that it was unfair to prevent him from introducing evidence of Shutt's purchases because Cianna was allowed to elicit testimony from Shutt that he tithed to his church and spent the money he received from Ruthven in other run-of-the-mill ways. *Id.* Again, Segner did not attempt to admit this evidence at trial. And even if Segner's evidence of what Shutt purchased was relevant and probative, it was not important enough for its exclusion warrants a new trial.

Third, Segner complains that the Court should have allowed his attorneys to present evidence and argue that violating the ODSTA is a serious crime and that Shutt exposed himself to over 100 years in prison by violating it. *Id.* But Segner discussed the act at length in front of the jury. Not much would have been gained by telling the jury the extent of the penalty Shutt would have faced for violating the act. Although whether Cianna violated the act is probative of good faith, the extent of the penalty for violating the act is not. So the Court finds that its ruling on Cianna's sixth motion in limine was not prejudicial enough to warrant a new trial.

Fourth, Segner claims that the Court's ruling on Cianna's fifth motion in limine unfairly prejudice him by preventing him introducing Dennis Roossien's testimony about the Provident scheme and criminal conviction until the end of the trial. *Id.* at 22. The Court has already addressed this argument.

Segner's fifth argument concerns the Court's ruling on Cianna's seventh motion in limine, which excluded an email from Wendall Holland of Ruthven to Joe Blimline that discussed kickbacks and the artificially high prices at which Ruthven was selling mineral interests to Provident. *Id.* But,

like Roossien's testimony, the Court allowed Segner to present the email to the jury. Thus, the Court's initial decision to exclude the email was not prejudicial enough for Segner to deserve a new trial.

4.      <u>Verdict Against Great Weight of Evidence</u>

Segner says the Court must grant a new trial because the jury's verdict was against the great weight of the evidence. *Id.* at 23. A court can grant a new trial if "the jury verdict was against the great weight of the evidence." *Scott v. Monsanto Co.*, 868 F.2d 786, 789 (5th Cir. 1989). "Mere conflicting evidence or evidence that would support a different conclusion by the jury cannot serve as the grounds for granting a new trial." *Islander E. Rental Program v. Barfield*, 145 F.3d 359 (5th Cir. 1998) (per curiam).

The jury's verdict was not against the great weight of the evidence. As to § 550(b)'s value requirement, Cianna presented evidence that it found, acquired, and transferred to Ruthven the mineral interests Ruthven wanted and warranted title to those interests. Trial Tr. Vol. II, 43, 161. Segner is incorrect that Cianna's failure to present evidence of the value of the mineral interests and its own evidence of the interests' lack of value requires the court to discount Cianna's evidence. And Segner's evidence that Cianna received more than it gave Ruthven at best conflicts with Cianna's evidence. Conflict, though, is not enough for the Court to grant a new trial.

As to the good faith and knowledge requirements, Cianna's principal, Shutt, testified that Cianna had a longstanding business relationship with Ruthven, Trial Tr. Vol. I, 79, 84–90, he had no contact with and knew nothing about Provident, Trial Tr. Vol. II, 43, 170, the Ruthven transactions were similar to Cianna's transactions with other clients, Trial Tr. Vol. I, 75–77, and that he was never actually aware that Provident or Ruthven had engaged in fraudulent or otherwise

unlawful conduct. Trial Tr. Vol. II, 170. Although Segner presented evidence it believed contradicted Cianna's evidence, Cianna's evidence is more than sufficient to support the jury's verdict. The jury could have reasonably believed based on the evidence before it that Cianna transacted with Ruthven as a matter of normal business. Even if the jury could have found for Segner based on the same evidence, the Court finds the verdict was not against the great weight of the evidence.

## IV.

## CONCLUSION

The Court **DENIES** Segner's motion for judgment as a matter of law and his motion for a new trial.

**SO ORDERED.**

**SIGNED: June 28, 2018.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE